**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT G. LUSTYIK, JR.,

Defendant - Appellant.

No. 20-4036
(D.C. Nos. 2:18-CV-00077-TC &
2:12-CR-00645-TC-1)
(D. Utah)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Robert G. Lustyik, Jr., a federal prisoner proceeding pro se, seeks a certificate of

appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2255 motion

to vacate, set aside, or correct his sentence.[1] Exercising jurisdiction under 28 U.S.C.

§ 1291, we deny the request for a COA and dismiss this matter.

## I. BACKGROUND

Mr. Lustyik, a long-time FBI Counterintelligence Agent, was charged in an

eleven-count federal indictment with one count of conspiracy to bribe a public official

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We construe Mr. Lustyik's pro se application for a COA liberally. *See Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002).

and to obstruct agency proceedings, eight counts of honest services wire fraud, one count of obstruction of justice, and one count of obstruction of agency proceedings. The indictment charged Lustyik with conspiring with his co-defendant, Michael Taylor, to derail a federal grand jury investigation into Taylor's suspected fraud and bribery in connection with obtaining government contracts. In exchange for shutting down the investigation, Taylor promised Lustyik money and a share of the profits from several lucrative contracts. Lustyik's attempts to hamper the investigation were alleged to have included, among other things, using his position as an FBI agent to communicate with federal law enforcement officials and prosecutors to dissuade them from filing charges against Taylor. Johannes Thaler, another co-defendant, was indicted for his role as the conduit between Lustyik and Taylor.

Counsel's strategy to defend the case was to "graymail" the government, which the district court described as "forcing [the government] to choose between risking the exposure of classified information and going through with the trial." R., Vol. 6 at 909 (internal quotation marks omitted). Mr. Lustyik was aware of and approved this strategy. *See id.* at 910 (citing lead counsel's statement in open court in which he explained the strategy and an email from Lustyik to Taylor in an earlier action in which he advised Taylor that a graymail defense was the best way to defeat the government). But this plan failed when, just days before trial was set to begin, the court entered an order preventing Lustyik from introducing any classified materials at trial.

Faced with overwhelming evidence of guilt, Mr. Lustyik pleaded guilty on the day trial was set to begin. By pleading guilty prior to trial (accepting responsibility), Lustyik

2

was able to secure a two-point reduction in his total offense level, which in turn lowered his recommended sentence under the sentencing guidelines. Several weeks later, the district court granted lead defense counsel Raymond Mansolillo's motion to withdraw and appointed Lustyik's local counsel, Michael Langford, as substitute counsel. The court rescheduled the sentencing to give Langford time to prepare.

In the meantime, Mr. Langford received the presentence report (PSR). The PSR calculated Mr. Lustyik's total offense level at 34, which triggered a recommended sentence of 151 to 181 months under the guidelines. Even though the probation officer who prepared the report did not have access to any classified information, Lustyik nonetheless filed a motion to allow Langford to seek a security clearance so he could review the classified materials produced by the government in discovery. The district court denied the motion.

At sentencing, Mr. Langford persuaded the district court to impose a below-guidelines sentence of 120 months. On direct appeal, this court affirmed the denial of Lustyik's motion to allow Langford to review the classified materials but remanded for sentence clarification. *See United States v. Lustyik*, 833 F.3d 1263, 1265 (10th Cir. 2016). On remand, the court clarified and re-imposed the 120-month sentence.

Mr. Lustyik then filed a § 2255 motion in which he raised a flood of ineffective assistance claims at three stages of the proceedings: (1) before the guilty plea; (2) at the guilty plea; and (3) at sentencing. The district court examined and denied each claim on the merits. The court also denied a COA.

Next, Mr. Lustyik filed a motion to reconsider under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. The court denied the motion as an unauthorized second or successive § 2255 motion. Lustyik now seeks a COA to appeal some, but not all, of the claims denied by the court.

## II. CERTIFICATE OF APPEALABILITY

To appeal the denial of relief under § 2255, a prisoner must receive a COA. *See* 28 U.S.C. § 2253(c)(1)(B) ("[U]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."). "We may grant a COA only if the petitioner makes a 'substantial showing of the denial of a constitutional right.'" *Milton v. Miller*, 812 F.3d 1252, 1263 (10th Cir. 2016) (quoting 28 U.S.C. § 2253(c)(2)). "To obtain a COA after a district court has rejected a petitioner's constitutional claims on the merits, the 'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the . . . constitutional claims debatable or wrong.'" *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law clearly establishes the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 684, 686 (1984) (recognizing that "the Sixth

4

Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial," and that "the right to counsel is the right to the effective assistance of counsel" (internal quotation marks omitted)).  To prevail on a claim for ineffective assistance, Mr. Lustyik must show both that counsel's performance was constitutionally deficient, and that the constitutionally deficient performance resulted in prejudice.  *See id.* at 687.

Under the first prong, Mr. Lustyik must demonstrate that the errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*; *see also Wilson v. Sirmons*, 536 F.3d 1064, 1083 (10th Cir. 2008) ("Counsel's performance must be completely unreasonable to be constitutionally ineffective, not merely wrong." (internal quotation marks omitted)).

In this regard, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 446 U.S. at 689.  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (internal quotation marks omitted).  We "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.

Under the second prong, Mr. Lustyik must "affirmatively prove prejudice."  *Id.* at 693.  "[M]ere speculation is not sufficient to satisfy [the petitioner's] burden."  *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

5

The prejudice standard differs depending on the nature of the claim.  For Mr. Lustyik's claims based on deficient performance before the guilty plea, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

For claims arising in the context of a guilty plea, the prejudice requirement is slightly different, and "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  And to show prejudice from counsel's failure to disclose a plea offer, Mr. Lustyik must demonstrate that he would have accepted the offer.  *See Missouri v. Frye,* 566 U.S. 134, 147 (2012) ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance [in this case, failure to communicate it], defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.").

Last, for Mr. Lustyik's claim that counsel's deficient performance caused him to be erroneously sentenced under a higher guideline, he "must not only allege prejudice of being erroneously sentenced under a higher guideline, but must also demonstrate that the

error produced a large or significant effect on the sentence." *United States v. Horey*, 333 F.3d 1185, 1187-88 (10th Cir. 2003) (internal quotation marks omitted).

"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## IV.  ANALYSIS

### A.  *Conflict of Interest*

The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free counsel.  *See Wood v. Georgia*, 450 U.S. 261, 271 (1981).  According to Mr. Lustyik, Mr. Mansolillo had an undisclosed conflict-of-interest based on a prior relationship with Mr. Taylor for whom Mansolillo worked as an investigator while he was also under contract as an investigator for the Drug Enforcement Agency (DEA). Working for Taylor and the DEA at the same time was allegedly a violation of Mansolillo's DEA contract.  Lustyik's theory was that Taylor's knowledge of this possible contract violation gave him leverage over Mansolillo.

Here, the district court found that "Mr. Lustyik waived any such conflict in order to keep Mr. Mansolillo as his attorney."  R., Vol. 6 at 912.  A defendant's waiver of his Sixth Amendment right to conflict-free counsel is valid if the trial judge "affirmatively participate[s] in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel."

7

*United States v. Migliaccio*, 34 F.3d 1517, 1527 (10th Cir. 1994) (internal quotation marks omitted).

Specifically, the district court found that "[t]his issue [of Mr. Mansolillo's work for Mr. Taylor while also he also worked for the DEA] was explicitly raised by the United States . . . before Mr. Lustyik waived the conflict of interest" and he "still chose to knowingly and voluntarily waive this conflict." R., Vol. 6 at 913. Further, before the waiver was executed, the court "appointed independent conflict counsel to advise Mr. Lustyik regarding how he should proceed . . . [a]nd the court personally examined Mr. Lustyik regarding his understanding of the consequences of waiving a conflict of interest." *Id.* at 912. We deny a COA because reasonable jurists would not debate the court's determination that Lustyik waived the conflict.

**B.** *Failure in Discovery Obligations*

Next, Mr. Lustyik maintained that Mr. Mansolillo was deficient because he failed to take his discovery obligations seriously. Relevant to the claims for which he now seeks a COA, Lustyik attacked Mansolillo for his failure to conduct discovery into the company used to funnel money between himself and Mr. Taylor and further failed to interview several potential witnesses.

But the district court found that there was no deficient performance because "[n]one of this conduct falls below the standard of care of a reasonable attorney." *Id.* at 908. In particular, the court explained that "at the time in question, . . . the founder of [the company used to funnel the money] had invoked his Fifth Amendment right against self-incrimination" and "most of the witnesses identified by Mr. Lustyik were likely to be

8

uncooperative because they were current or former government officials subject to nondisclosure agreements and the information Mr. Lustyik sought from them was classified." *Id.* at 908-09. "Given these impediments, it ma[de] sense for Mr. Mansolillo to focus his efforts elsewhere." *Id.* at 909. Because reasonable jurists would not debate the court's resolution of this claim, we deny a COA.

## C. *Failure to Seek an Early Plea Deal*

According to Mr. Lustyik, Mr. Mansolillo's performance was also deficient because he failed to initiate plea negotiations early in the case. But when the district court asked the parties about the possibility of settlement, "both sides indicated they were waiting for the other side to initiate negotiations." *Id.* at 908. Here, the court found that Mansolillo's decision to wait for the government to start negotiations was "a legitimate tactic." *Id.* Moreover, there was no deficient performance based on the facts of the case at the time of Mansolillo's conduct; instead, the facts were that no plea deal was likely unless and until the defense prevailed on its graymail strategy, which was not resolved until the eve of trial. Again, we deny a COA because reasonable jurists would not debate the court's resolution of this claim.

## D. *Failure to Prepare for Trial*

The district court also rejected Mr. Lustyik's claim that Mr. Mansolillo's failure to prepare for trial resulted in him having to enter a guilty plea. As the court explained, "[a]ssuming that Mr. Mansolillo was ineffective because he was unprepared for trial (a reasonable assumption given that . . . his primary strategy was to [graymail the

9

government and force a plea deal]), the court nevertheless concludes Mr. Lustyik was not prejudiced by this lack of preparation." *Id.* at 917.

"A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017). This was the situation facing Lustyik once his graymail strategy failed.

Citing "numerous incriminating text messages and emails between Mr. Lustyik and his co-defendants," the district court found that "the evidence against him was overwhelming." R., Vol. 6 at 917. Moreover, the court found that "[b]ased on the messages alone, no reasonable jury would have applied [a public authority] defense and acquitted Mr. Lustyik." *Id.* at 918.[2] "Here, although no plea agreement was reached, Mr. Lustyik was able to receive a two-point downward variance in the calculation of his sentence for accepting responsibility by pleading guilty. [Therefore], [h]e has not shown a reasonable probability that, even with competent counsel, he would have obtained a better outcome than this . . . ." *Id.* at 917. In other words, the court found no prejudice. Reasonable jurists would not debate the court's resolution of this claim and therefore we deny a COA.

---

[2] A public authority defense "requires a defendant to show that he was engaged by a government official to participate in a covert activity." *United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (internal quotation marks omitted).

**E.** *Failure to Obtain a Plea Agreement*

Mr. Lustyik further claimed that Mr. Mansolillo performed deficiently because he failed to engage in plea negotiations and his failure to do so resulted in prejudice. As a preliminary matter, we reject Lustyik's contention that the district court "conceded that . . . Mansolillo . . . was in fact ineffective for failing to engage in Plea Negotiations, thus satisfying the first prong under Strickland." Aplt. Br. at 15. To the contrary, the court never reached the issue of deficient performance; instead, it resolved the claim on lack of prejudice. *See* R., Vol. 6 at 920-21.

We can dispose of the claim on the grounds that there was no deficient performance. *See Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005) ("No reason suggests itself why [the principle of affirming on any ground supported by the record] should be rejected in considering an application for a COA").

In this regard, we note the testimony of Darrin McCullough, an assistant deputy chief of the Asset Forfeiture and Money Laundering Section of the Department of Justice, who was called as a witness by Mansolillo at the plea hearing. Mr. McCullough testified that after the "graymail" strategy failed, he spoke to Mr. Mansolillo, who "*outlined the parameters of what they were looking for in a plea*. I agreed to convey that back to the trial team. I did so. They ran it through their chain of command. *The response came back that [Mr. Lustyik] could plead to the indictment*. I conveyed that to Mr. Mansolillo." R., Vol. 2 at 127 (emphasis added). McCullough further testified that he told Mansolillo "you can plead guilty and get your two levels, which are essentially . . . automatic for acceptance of responsibility under the guidelines. . . . But that was the

11

context of our discussion. It was simply there would be nothing available other than the two levels, if the Court elected to give them to him . . . ." *Id.* at 127-28.

Here, the record shows that when the graymail strategy collapsed on the eve of trial, Mr. Mansolillo promptly sought a plea deal. Because no reasonable jurist would debate whether Mansolillo's performance was deficient, we deny a COA.

## F. *Failure to Disclose a Plea Offer*

Mr. Lustyik further maintained that Mr. Mansolillo was deficient because he received a plea offer that he failed to disclose. In particular, he cited to several media reports following his guilty plea in which Mansolillo allegedly told reporters that Lustyik turned down a plea agreement because it would have required him to testify against Mr. Thaler, a childhood friend.

The failure to inform a defendant of a favorable plea offer is a viable ineffective assistance of counsel claim when a defendant can prove prejudice, i.e., but for counsel deficient performance, he would have accepted the offer. *See Frye,* 566 U.S. at 147. Indeed, the district court acknowledged that ineffective assistance "may arise in this context." R., Vol. 6 at 921. But the court denied the claim because, among other things, "Mr. Lustyik never declares that he would have accepted a deal that required him to testify against his childhood friend and co-defendant, Mr. Thaler." *Id.* at 922. More to the point, there is no evidence that any such deal was offered by the government; instead, the record shows that the government's "deal" was that Lustyik could plead guilty to the indictment. We deny a COA because reasonable jurists would not debate the court's resolution of this claim.

12

**G.** *Discrepancy in the Total Offense Level*

According to Mr. Lustyik, Mr. Langford was ineffective at sentencing when he failed to raise a discrepancy between the total offense level in the PSR and the total offense level at the time of sentencing. Specifically, Lustyik alleged that the PSR calculated his anticipated forfeiture at $200,000, which resulted in a total offense level of 34, but the district court later determined that he was liable for a $70,000 forfeiture, which reduced his total offense level to 30. Lustyik argued that Langford's failure to bring this discrepancy to the court's attention resulted in him being sentenced under a higher guideline. He further argued that if the court had used a total offense level of 30, which carried a recommended guidelines sentence of 97 to 121 months, it would have imposed a sentence somewhere below 97 months, similar to what it did when it used a total offense level of 34 and imposed a sentence below the recommended guidelines range of 151 to 181 months.

The district court acknowledged Mr. Langford's deficient performance but found no prejudice. Here, the court noted that when it sentenced Mr. Lustyik to 120 months, he "was already sentenced to a prison term that fell within the guideline range that should have been applied," *id.* at 925, and therefore failed to demonstrate a large or significant effect on the sentence. Moreover, the court rejected Lustyik's argument that he would have received a sentence lower than 97 months as "entirely speculative." *Id.* We deny a COA because reasonable jurists would not debate the court's resolution of this claim.

13

**H.** *Cumulative Error*

In his application for a COA, Mr. Lustyik raises for the first time a claim of cumulative error. However, we will not consider this claim because it was not raised in Lustyik's § 2255 motion; rather, he first raised the issue in his motion for reconsideration, which the district court refused to consider because it was an unauthorized second or successive § 2255 motion. *See United States v. Viera*, 674 F.3d 1214, 1220 (10th Cir. 2012) (holding, in the context of a COA application, "we adhere to our general rule against considering issues raised for the first time on appeal").

**I.** *Denial of an Evidentiary Hearing*

Last, Mr. Lustyik maintains that the district court improperly denied him an evidentiary hearing on his claim that Mr. Mansolillo failed to disclose his "last minute" discussions with the government about a plea deal that "revolved around" him testifying against Mr. Thaler. Aplt. Br. at 17.

"We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (internal quotation marks omitted). Given the record below, reasonable jurists would agree that the district court did not abuse its discretion in denying an evidentiary hearing because Mr. McCullough testified that the only "deal" offered by the government was for Lustyik to plead guilty to the indictment. *See United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010) (denying request for COA on failure to conduct evidentiary hearing because "there were no relevant, disputed issues of fact that needed to be resolved").

14

## V.  CONCLUSION

We deny Mr. Lustyik's application for a COA and dismiss this matter.


Entered for the Court


Allison H. Eid
Circuit Judge